IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
CLARKSBURG

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

v.                                         Crim. Action No. 1:18-cr-46-7
                                                                        (Judge Kleeh)

**CODY BOLEY,**

    **Defendant.**

**MEMORANDUM OPINION AND ORDER ADOPTING
REPORT AND RECOMMENDATION [ECF NO. 491] IN PART,
REJECTING IN PART, AND DENYING MOTION TO SUPPRESS [ECF NO. 322]**

This case stems from an encounter in Weston, West Virginia, between a police officer and Cody Boley ("Defendant") that led to Defendant's indictment in this action. Pending before the Court is a motion to suppress [ECF No. 322]. United States Magistrate Judge Michael J. Aloi ("Judge Aloi") issued a Report and Recommendation ("R&R") on the motion, recommending that it be denied. For the reasons set forth below, the Court hereby **ADOPTS** the R&R in part [ECF No. 491], **REJECTS** it in part, and **DENIES** the pending motion to suppress [ECF No. 322].

**I.**     <u>**BACKGROUND**</u>

On September 18, 2018, the grand jury returned a 40-count indictment, charging Defendant with Conspiracy to Distribute Methamphetamine (Count 1); Possession with Intent to Distribute

**MEMORANDUM OPINION AND ORDER ADOPTING
REPORT AND RECOMMENDATION [ECF NO. 491] IN PART,
REJECTING IN PART, AND DENYING MOTION TO SUPPRESS [ECF NO. 322]**

Methamphetamine (Count 25); Unlawful Possession of a Firearm (Count 26); and Use of a Firearm During and in Relation to a Drug Offense (Count 27) [ECF No. 1]. On November 26, 2018, Defendant moved to suppress evidence seized during the stop, along with all statements made during the stop and at the subsequent interview with federal agents [ECF No. 322]. Pursuant to 28 U.S.C. § 636, the motion was referred to Judge Aloi [ECF No. 323].

On December 14, 2018, Judge Aloi held a hearing on the motion. After the hearing, Defendant filed a supplement to his previously-filed memorandum of law [ECF No. 384]. On February 15, 2019, Judge Aloi issued his R&R, recommending that the Court deny the motion to suppress [ECF No. 491]. On February 21, 2019, Defendant filed objections to the R&R [ECF No. 494]. The Court has read and reviewed the entire record in this matter, including the body camera footage, all exhibits, and the audio recording of the suppression hearing. The facts adduced at the evidentiary hearing are set forth and summarized fully throughout the R&R and are not reiterated here.

**II.  ARGUMENTS**

    **A.  Defendant's Motion to Suppress [ECF No. 322]**

In Defendant's motion, he argues that the Lewis County Sheriff's Department's search of his vehicle violated his Fourth

**MEMORANDUM OPINION AND ORDER ADOPTING
REPORT AND RECOMMENDATION [ECF NO. 491] IN PART,
REJECTING IN PART, AND DENYING MOTION TO SUPPRESS [ECF NO. 322]**

Amendment rights. He argues that the statements obtained during a later interview with federal agents should be suppressed because they were derived from the unlawful search. Defendant argues that he was never advised of his <u>Miranda</u> rights during the stop and that he did not consent to a search of his vehicle. Furthermore, he argues, the length of the stop was not proper, and the police reports were intentionally vaguely-worded in a "bad faith attempt to conceal any time line."

    **B.    Government's Response [ECF No. 371]**

In response, the government argues that Defendant's vehicle was legally stopped for a traffic violation and that the stop was extended as a result of the officer's articulable and reasonable suspicion of criminal activity. After the canine's positive alert, the police officers had probable cause to search the vehicle. Additionally, the government argues, Defendant's statements to law enforcement officers on May 22, 2018, were voluntary. The statements were made five days after his arrest, Defendant executed a waiver of rights form, and he agreed to have his statement recorded.

    **C.    Defendant's Supplement [ECF No. 384]**

In Defendant's supplement to his motion, he points out items that are "conspicuous in their absence." He argues that no

USA V. BOLEY                                        1:18-CR-46-7

**MEMORANDUM OPINION AND ORDER ADOPTING
REPORT AND RECOMMENDATION [ECF NO. 491] IN PART,
REJECTING IN PART, AND DENYING MOTION TO SUPPRESS [ECF NO. 322]**

reasonable suspicion has been articulated in either the government's briefs or the police report. Deputy Lopez professed to having no memory of radio traffic indicating completion of the traffic stop, and the record lacks any Drug Recognition Expert protocols. He also takes issue with Deputy Lopez's stated belief that he is to search every vehicle and that failure to consent by its occupants amounts to disrespect.

### III. STANDARD OF REVIEW

When reviewing a magistrate judge's R&R, the Court must review *de novo* only the portions to which an objection has been timely made. 28 U.S.C. § 636(b)(1)(C). Otherwise, "the Court may adopt, without explanation, any of the magistrate judge's recommendations to which the [parties do] not object." Dellarcirprete v. Gutierrez, 479 F. Supp. 2d 600, 603-04 (N.D.W. Va. 2007) (citing Camby v. Davis, 718 F.2d 198, 199 (4th Cir. 1983)). Courts will uphold portions of a recommendation to which no objection has been made unless they are clearly erroneous. See Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005).

Here, objections to the R&R were due on or before Friday, February 22, 2019 [ECF No. 491 at 22]. Defendant timely filed objections on February 21, 2019 [ECF No. 494]. He specifically objected to Section C at page 19, Section E at page 20, and Section

USA V. BOLEY                                                    1:18-CR-46-7

**MEMORANDUM OPINION AND ORDER ADOPTING
REPORT AND RECOMMENDATION [ECF NO. 491] IN PART,
REJECTING IN PART, AND DENYING MOTION TO SUPPRESS [ECF NO. 322]**

F at page 21. Accordingly, the Court reviews these portions *de novo* and reviews for clear error the portions to which there were no objections.

## IV. LEGAL ANALYSIS

For the reasons explained below, the Court adopts Section C of the R&R, rejects Section E, and adopts Section F.

### A. THE COURT ADOPTS SECTION C OF THE R&R BECAUSE DEPUTY LOPEZ HAD REASONABLE, ARTICULABLE SUSPICION TO INITIATE AND EXTEND THE TRAFFIC STOP.

The Fourth Amendment to the Constitution of the United States provides that "[t]he right of the people to be secure in their persons . . . against unreasonable . . . seizures, shall not be violated." U.S. Const. amend. IV. A seizure must be supported by a "'reasonable suspicion,' based on articulable, particularized facts, that 'criminal activity may be afoot.'" United States v. McCoy, 513 F.3d 405, 410–11 (4th Cir. 2008) (citing Terry v. Ohio, 392 U.S. 1, 30 (1968)). Reasonable suspicion "defies precise definition." Id. at 411. In determining whether reasonable suspicion exists, courts "look to the totality of the circumstances." Id. The Supreme Court of the United States has "counseled lower courts to give 'due weight' to the factual inferences drawn by police officers as they investigate crime." Id. (citing United States v. Arvizu, 534 U.S. 266, 273 (2002)).

**MEMORANDUM OPINION AND ORDER ADOPTING
REPORT AND RECOMMENDATION [ECF NO. 491] IN PART,
REJECTING IN PART, AND DENYING MOTION TO SUPPRESS [ECF NO. 322]**

Some, but not all, police-citizen interactions rise to the level of a seizure. It is well-established that "[a] traffic stop is a 'seizure' within the meaning of the Fourth Amendment and must be reasonable under the circumstances." United States v. Palmer, 820 F.3d 640, 648 (4th Cir. 2016) (citing Delaware v. Prouse, 440 U.S. 648, 653-54 (1979)). A traffic stop is reasonable in its inception if police have stopped an individual for failing to comply with traffic laws. Id. at 649.

Police officers conducting a traffic stop may order the vehicle's occupants "to get out of the car pending completion of the stop." Maryland v. Wilson, 519 U.S. 408, 415 (1997). The Fourth Circuit has provided the following guidance as to the acceptable length of a traffic stop:

> The maximum acceptable length of a routine traffic stop cannot be stated with mathematical precision. Instead, the appropriate constitutional inquiry is whether the detention lasted longer than was necessary, given its purpose. Thus, once the driver has demonstrated that he is entitled to operate his vehicle, and the police officer has issued the requisite warning or ticket, the driver "must be allowed to proceed on his way." **Of course, if the driver obstructs the police officer's efforts in any way -- for example, by providing inaccurate information -- a longer traffic stop would not be unreasonable.**
>
> If a police officer wants to detain a driver beyond the scope of a routine traffic stop,

USA V. BOLEY                                            1:18-CR-46-7

**MEMORANDUM OPINION AND ORDER ADOPTING
REPORT AND RECOMMENDATION [ECF NO. 491] IN PART,
REJECTING IN PART, AND DENYING MOTION TO SUPPRESS [ECF NO. 322]**

> however, he must possess a justification for doing so other than the initial traffic violation that prompted the stop in the first place. Thus, a prolonged automobile stop requires either the driver's consent or a "reasonable suspicion" that illegal activity is afoot.

United States v. Branch, 537 F.3d 328, 336 (4th Cir. 2008) (emphasis added and internal citations omitted).

Here, Deputy Lopez's vehicular stop was reasonable in its inception because Deputy Lopez noticed that Defendant's inspection sticker was missing (a traffic violation under section 17C-16-9 of the West Virginia Code). Motion Hearing at 1:15:21–37. Then Defendant provided Deputy Lopez with a false name, and Deputy Lopez learned that Defendant did not have a valid driver's license. Id. at 1:16:39–1:17:04. Thus, extending the traffic stop was reasonable under Branch because Defendant provided Deputy Lopez with inaccurate information.

Furthermore, Deputy Lopez had additional articulable, reasonable suspicion to prolong the traffic stop. Deputy Lopez noticed that the vehicle's occupants were exhibiting nervous behavior. Id. at 1:16:10–20. Defendant was also picking scabs on his body, and Deputy Lopez has learned during his experience in law enforcement that this behavior is typically associated with individuals who are needle users of methamphetamine. Id. at

**MEMORANDUM OPINION AND ORDER ADOPTING
REPORT AND RECOMMENDATION [ECF NO. 491] IN PART,
REJECTING IN PART, AND DENYING MOTION TO SUPPRESS [ECF NO. 322]**

1:17:42–52; 1:18:12–22. Deputy Lopez also saw a lock box in the vehicle; in his experience, he has learned that when lock boxes are found in vehicles, they are used to store illegal substances or cash related to drug transactions. Id. at 1:41:30–1:42:09. Thus, the stop was reasonable in its inception and its extension. The Court adopts this portion of the R&R (Section C).

> **B.   THE COURT REJECTS SECTION E OF THE R&R BECAUSE THE RECORD LACKS SUFFICIENT EVIDENCE OF THE SHERIFF'S DEPARTMENT'S AUTOMOBILE INVENTORY SEARCH POLICY OR PROCEDURE.**

The "exclusionary rule" provides that evidence obtained in violation of the Fourth Amendment may not be admitted at trial. See Mapp v. Ohio, 367 U.S. 643, 654 (1961). Under the "inevitable discovery" exception to the rule, evidence that was illegally seized remains admissible if the government can prove "by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means." Nix v. Williams, 467 U.S. 431, 432 (1984).

In United States v. George, the Fourth Circuit accepted the theory that a routine inventory search policy may serve as the basis for the admission of evidence under the inevitable discovery doctrine. 971 F.2d 1113, 1121 (4th Cir. 1992). However, the court declined to apply it in that instance because "there ha[d] been no opportunity to establish that the [evidence] inevitably would have

USA V. BOLEY                                               1:18-CR-46-7

**MEMORANDUM OPINION AND ORDER ADOPTING**
**REPORT AND RECOMMENDATION [ECF NO. 491] IN PART,**
**REJECTING IN PART, AND DENYING MOTION TO SUPPRESS [ECF NO. 322]**

been discovered during the course of executing the county's standard inventory search." Id. at 1121–22. The court vacated the related portion of the district court's suppression order, noting that "the government must prove that under standard inventory procedures," the police would have found the evidence. Id. at 1122.

Here, as Judge Aloi notes in the R&R, the parties did not brief or argue the issue of inevitable discovery. In the body camera footage, Deputy Lopez can be heard saying to another officer, "Hey, can you go ahead and grab all their names? We're gonna run 'em for warrants, . . . and we're gonna get a dog. And then we're gonna tow the vehicle." Gov't Ex. 1a, Video 1, at 5:29–41. He later asks if anyone is able to drive the vehicle before realizing it could not be driven because it did not have an inspection sticker: "You don't have an inspection sticker. You gotta have an inspection sticker to drive." Id. at 8:58–9:24. In the video, he says he will "probably tow it" multiple times and says once that he "will tow it." Id.

During the motion hearing, when Judge Aloi asked Deputy Lopez what ultimately happened to the vehicle, the following exchange occurred:[1]

---

[1] This exchange occurs from 2:48:46 to 2:49:23 in the audio recording of the motion hearing from December 14, 2018.

USA V. BOLEY                                              1:18-CR-46-7

**MEMORANDUM OPINION AND ORDER ADOPTING
REPORT AND RECOMMENDATION [ECF NO. 491] IN PART,
REJECTING IN PART, AND DENYING MOTION TO SUPPRESS [ECF NO. 322]**

> Judge Aloi:     What ultimately happened to the vehicle? Was it towed away? Did someone come get it?
>
> Deputy Lopez:   Um, I believe we towed it. I can't remember exactly who towed it or where they towed it to.
>
> Judge Aloi:     What's your policy when you have unregistered vehicles that don't have valid inspections?
>
> Deputy Lopez:   I don't know exactly what the policy says. I know most of the time we find, if there's someone that's valid in the vehicle, we let them drive. If not, we tow the vehicle.
>
> Judge Aloi:     Ok. Did you have anyone valid in the vehicle?
>
> Deputy Lopez:   No.

Judge Aloi wrote in his R&R that the inevitable discovery doctrine applies because Deputy Lopez testified that the vehicle would have been towed. Therefore, Judge Aloi found that it was likely that an inventory search would have been conducted by the Lewis County Sheriff's Department, at which time the evidence would have been discovered. The Court declines to adopt this line of reasoning. Neither Deputy Lopez's testimony nor his comments on the body camera footage prove that under standard inventory procedures, the police would have found the evidence. The record

USA V. BOLEY                                                    1:18-CR-46-7

**MEMORANDUM OPINION AND ORDER ADOPTING  
REPORT AND RECOMMENDATION [ECF NO. 491] IN PART,  
REJECTING IN PART, AND DENYING MOTION TO SUPPRESS [ECF NO. 322]**

lacks a sufficient showing that the Sheriff's Department has a standard practice that would include towing the vehicle, performing an inventory search of it, and, therefore, finding the evidence at issue. Had evidence concerning the Department's policy, practice, and/or procedure for processing towed vehicles been offered, Judge Aloi's recommendation and reasoning would likely have been adopted; however, with the record as it is, the Court rejects this portion of Judge Aloi's R&R (Section E).

    **C.    THE COURT ADOPTS SECTION F OF THE R&R BECAUSE DEFENDANT'S STATEMENTS DURING THE TRAFFIC STOP AND INTERVIEW WERE KNOWING, VOLUNTARY, AND NOT TAKEN IN VIOLATION OF HIS CONSTITUTIONAL RIGHTS.**

    **1.    Traffic Stop**

The Fifth Amendment to the Constitution of the United States provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. In order to protect this right, the Supreme Court of the United States held in <u>Miranda v. Arizona</u> that the prosecution may not use statements stemming from custodial interrogations of a suspect unless the prosecution demonstrates that it has used certain procedural safeguards. 384 U.S. 436, 478–79 (1966). The procedural safeguards include informing the suspect that he has the right to remain silent, that anything he says may be used as evidence against him, and that he has a right to the presence of an attorney.

USA V. BOLEY                                                   1:18-CR-46-7

**MEMORANDUM OPINION AND ORDER ADOPTING
REPORT AND RECOMMENDATION [ECF NO. 491] IN PART,
REJECTING IN PART, AND DENYING MOTION TO SUPPRESS [ECF NO. 322]**

Id. at 444. A suspect may waive these rights, as long as the "waiver is made voluntarily, knowingly and intelligently." Id. To violate Miranda, police must have obtained a statement -- without using safeguards -- from a suspect while he was (1) in custody and (2) being interrogated.

Whether a suspect is in custody depends on whether his "freedom of action is curtailed to a 'degree associated with formal arrest.'" Berkemer v. McCarty, 468 U.S. 420, 440 (1984) (quoting California v. Beheler, 463 U.S. 1121, 1125 (1983) (per curiam)). An individual is not in custody simply because he is not free to leave. United States v. Sullivan, 138 F.3d 126, 130–31 (4th Cir. 1998). An interrogation has taken place when police officers engaged in "words or actions . . . that they should have known were reasonably likely to elicit an incriminating response" from the suspect. Rhode Island v. Innis, 446 U.S. 291, 302 (1980).

The Supreme Court of the United States has found that individuals who are temporarily detained during ordinary traffic stops "are not 'in custody' for purposes of Miranda" due to the "noncoercive aspect" of such stops. Berkemer, 468 U.S. at 440; see also Sullivan, 138 F.3d at 131 ("At bottom, a routine traffic stop does not place the motorist in custody so as to require Miranda warnings."). The Fourth Circuit has held that handcuffs, in and of

USA V. BOLEY                                                    1:18-CR-46-7

**MEMORANDUM OPINION AND ORDER ADOPTING
REPORT AND RECOMMENDATION [ECF NO. 491] IN PART,
REJECTING IN PART, AND DENYING MOTION TO SUPPRESS [ECF NO. 322]**

themselves, do not establish involuntariness of a suspect's statements. United States v. Seni, 662 F.2d 277, 281 (4th Cir. 1981); see also United States v. Leshuk, 65 F.3d 1105, 1110 (4th Cir. 1995) (writing that "handcuffing a suspect . . . does not necessarily elevate a lawful stop into a custodial arrest for Miranda purposes"). The Fourth Circuit has also held that an officer may temporarily handcuff a suspect during a traffic stop for the officer's safety, without triggering a Miranda requirement, as long as the restriction lasts only long enough to verify suspicions of illegal activity. United States v. Donaldson-Pinilla, 292 Fed.Appx. 217, 218-20 (4th Cir. 2008).

Here, the body camera footage depicts Deputy Lopez handcuffing Defendant and asking him to sit against the police cruiser. While putting the handcuffs on him, Deputy Lopez says, "At this time, I am not arresting you. I am just detaining you, okay?" Gov't Ex. 1a, Video 1, at 4:29-5:24. The footage indicates that Defendant was released from his handcuffs at some point; at the beginning of Video 4, he is not in handcuffs. Officer Lopez testified at the motion hearing that he handcuffed Defendant for his own safety: "Yes, I was detaining him for my safety. There was three people in the car and I was by myself." 2:38:59-2:39:17.

**MEMORANDUM OPINION AND ORDER ADOPTING
REPORT AND RECOMMENDATION [ECF NO. 491] IN PART,
REJECTING IN PART, AND DENYING MOTION TO SUPPRESS [ECF NO. 322]**

Under controlling Fourth Circuit precedent, although Defendant was temporarily handcuffed and asked to sit against the police cruiser, Defendant was not in custody for purposes of Miranda. Because Deputy Lopez testified that this was done for his safety, because it was temporary, and because he informed Defendant that he was merely being detained and not arrested, the Court finds that Defendant was not in custody under Miranda. Because he was not in custody, it not necessary for the Court to determine whether an interrogation occurred. The parties did not brief this issue. Because Defendant was not in custody, no Miranda warnings were required, and statements Defendant made during the traffic stop are admissible as evidence against him.

### 2. ATF Interview

Five days later, Special Agent Steve Worthy ("Agent Worthy") of the Bureau of Alcohol, Firearms, and Explosives ("ATF") interviewed Defendant at the regional jail. Motion Hearing at 2:50:39-53. Agent Worthy read Defendant his Miranda rights, Defendant executed a waiver indicating that he understood his rights, and Defendant expressed a desire to answer some of Agent Worthy's questions. Id. at 2:51:26-2:52:18. Defendant also advised Agent Worthy that he was willing to have his statement recorded. Id. at 2:52:18-26. After this, Defendant claimed possession of the

USA V. BOLEY                                                    1:18-CR-46-7

**MEMORANDUM OPINION AND ORDER ADOPTING
REPORT AND RECOMMENDATION [ECF NO. 491] IN PART,
REJECTING IN PART, AND DENYING MOTION TO SUPPRESS [ECF NO. 322]**

firearm in the vehicle and the crystal methamphetamine found in the driver's side door. Id. at 2:53:27–2:54:28.

This interview was a custodial interrogation, but Defendant was advised of his Miranda rights before he made any statements. Defendant executed a waiver indicating that he understood his rights. He expressed a desire to answer questions and to have his statement recorded. As such, the Court finds that his statements were knowing, voluntary, and not taken in violation of his constitutional rights. Furthermore, the statements are not fruit of the poisonous tree because there was nothing unconstitutional about either the seizure of Defendant during the traffic stop or the search that followed. Therefore, the statements should not be suppressed. The Court adopts Section F of the R&R.

V.  **CONCLUSION**

The Court finds no clear error in the remaining portions of the R&R -- to which no objections were made -- and, therefore, adopts those portions. In summary, the initial traffic stop was reasonable, as was its extension. When the canine positively alerted to drugs in the vehicle, officers had probable cause to search. Therefore, the search and the fruits of it were constitutionally sound, as was the interview with ATF agents,

**MEMORANDUM OPINION AND ORDER ADOPTING
REPORT AND RECOMMENDATION [ECF NO. 491] IN PART,
REJECTING IN PART, AND DENYING MOTION TO SUPPRESS [ECF NO. 322]**

before which Defendant was mirandized. The Court finds the following:

(1) Section C of the R&R is **ADOPTED**;

(2) Section E is **REJECTED**;

(3) Section F is **ADOPTED**;

(4) The remaining portions of the R&R are **ADOPTED**; and

(5) Defendant's motion to suppress [ECF No. 322] is **DENIED**.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to counsel of record.

DATED: March 21, 2019

*/s/ Thomas S. Kleeh*
THOMAS S. KLEEH
UNITED STATES DISTRICT JUDGE